(84 Misc. Rep. 359)

BANDLER v. HILL et al.

(Supreme Court, Trial Term, Nassau County. February 24, 1914.)

1. STATUTES (§ 170*)—RE-ENACTMENT—EFFECT.

Under General Construction Law (Consol. Laws 1909, c. 22) § 95, providing that the provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions, modified or amended according to the language employed, and not as new enactments, the provisions of the Tax Law of 1909 (Consol. Laws 1909, c. 60) §§ 132, 140, 158, which substantially re-enacted the provisions of the Tax Law of 1896 (Laws 1896, c. 908), §§ 132, 140, 157, are to be deemed a continuation of the prior law, notwithstanding its formal repeal, and to have been in force continuously from the time the Tax Law of 1896 took effect.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 245, 248, 249; Dec. Dig. § 170.*]

2. TAXATION (§ 745*)—TAX TITLES—CANCELLATION OF SALES—CONSTRUCTION OF STATUTE.

Tax Law 1896 (Laws 1896, c. 908) § 140, re-enacted in Tax Law 1909 (Consol. Laws 1909, c. 60) § 140, authorizing the cancellation of tax sales and the refund of the purchase price, where such sale is invalid or ineffectual to pass title, is prospective in its language, and has no retrospective application.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 745.*]

3. TAXATION (§ 745*)—TAX TITLES—EFFECT OF DEEDS—CONSTRUCTION OF STATUTE.

The provision of Tax Law 1896 (Laws 1896, c. 908) § 132, re-enacted in Tax Law 1909 (Consol. Laws 1909, c. 60) § 132, regarding the effect to be given tax deeds, certificates, etc., theretofore executed, is wholly retrospective, but the provision as to cancellation of tax sales held prior

or subsequent to its enactment is prospective, as well as retrospective, in its operation.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 745.*]

4. TAXATION (§ 770½*)—TAX TITLES—CANCELLATION—STATUTE.
Under Tax Law 1896 (Laws 1896, c. 908) § 140, re-enacted in Tax Law 1909 (Consol. Laws 1909, c. 60) § 140, authorizing the cancellation of tax sales on certain grounds upon application by the owner, or any person in interest "at the time of the tax sale," neither the successor of the owner nor of the purchaser may apply for a cancellation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1539; Dec. Dig. § 770½.*]

5. TAXATION (§ 770½*)—TAX TITLES—CANCELLATION—STATUTES.
Under Tax Law of 1896 (Laws 1896, c. 908) § 140, re-enacted in the Tax Law of 1909 (Consol. Laws 1909, c. 60) § 140, authorizing the cancellation of tax sales on certain grounds upon application "by the owner at the time of the tax sale," parties to whom the owner subsequently quit-claimed the property could not, by joining him with them in their application, have the sale canceled, since the statute contemplates an application by an owner who has retained some interest in the property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1539; Dec. Dig. § 770½.*]

6. TAXATION (§ 770½*)—TAX TITLES—CANCELLATION—STATUTES.
Tax Law 1896 (Laws 1896, c. 908) § 132, re-enacted in Tax Law 1909 (Consol. Laws 1909, c. 60) § 132, authorizing application to cancel a tax sale within a certain time, is a statute of limitations, but the bar of the statute need not be alleged in order to defeat an application to the county treasurer for the cancellation of a tax sale after the prescribed time, since the treasurer is not a court, and the rule that a statute of limitations must be pleaded to defeat a court's jurisdiction does not apply.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1539; Dec. Dig. § 770½.*]

7. OFFICERS (§ 107*)—POWERS—EXERCISE OF JUDICIAL POWERS.
Where an administrative officer is clothed by statute with judicial or quasi judicial powers, such powers can be exercised only in the manner and under the circumstances prescribed by the statute, and any attempted exercise thereof, in any other manner or under different circumstances, is a nullity.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 107.*]

8. TAXATION (§ 770½*)—TAX TITLES—CANCELLATION—STATUTES.
Under Tax Law 1896 (Laws 1896, c. 908) § 132, re-enacted in Tax Law 1909 (Consol. Laws 1909, c. 60) § 132, authorizing application for the cancellation of a tax sale within a certain time, the county treasurer was without jurisdiction to cancel a tax sale upon an application filed after' the prescribed time.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1539; Dec. Dig. § 770½.*]

Action in ejectment by David Bandler against John R. Hill and another. Judgment for defendants.

Charles H. Stoll, of Richmond Hill, for plaintiff.

Maxson & Jones, of Hempstead (Henry L. Maxson, of Hempstead, of counsel), for defendants.

BENEDICT, J. This is an action in ejectment to recover two lots of land situated in the town of North Hempstead, Nassau county. Trial by jury was waived, and the case was submitted to the court upon an agreed statement of facts and testimony taken on the trial.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The facts set forth in such statement, briefly recited, are as follows: On or about December 17, 1912, Charles L. Sicardi and Henry F. Koch and their wives quitclaimed the premises in question, with other property, to one Bessie F. Goetschius for an "alleged" consideration of $10 by deed recorded February 8, 1913. On June 16, 1913, said Bessie F. Goetschius purported to convey said premises, with other property, to the plaintiff, by deed recorded June 26, 1913. The consideration for this conveyance was $3,000, but it does not appear how much "other property" was included in the conveyance, so that there is no means of estimating how much plaintiff paid for the premises involved in this action. In December, 1902, the county treasurer of Nassau county sold the two lots in question separately to John G. Kusch for the unpaid taxes of 1898, 1899, and 1900, and later executed to him tax deeds for the same, which were recorded October 23, 1905. Subsequently, and on February 6, 1911, said Kusch conveyed to the defendant John R. Hill one of said lots, and on October 3, 1911, Kusch conveyed to the defendant Edith H. Hill the other lot. The deeds for both of these conveyances were recorded July 30, 1913. The actual consideration in each case was $125. About February 8, 1913, subsequent to the conveyance from Sicardi and Koch to Goetschius, but before the conveyance from Goetschius to the plaintiff, Sicardi, Koch, and Goetschius united in presenting a petition to the then county treasurer of Nassau county to cancel the tax sale of said lots, alleging that Sicardi and Koch had owned the said premises and other property from 1892 until December 17, 1912, the date of the conveyance to Goetschius, and that they had never resided either in Queens county or Nassau county. The county treasurer appointed a commissioner to take proof of the invalidity of the tax deeds and the assessments and sales on which they were based, and upon his report the county treasurer made an order on May 19, 1913, canceling the said deeds and tax sales upon the following grounds:

"That the assessments for 1898, 1899, and 1900 [of the property involved in said application, I assume] are not set out in a separate part of the assessment rolls for said years, for the listing of property of nonresidents; that the quantity of land assessed is not set down in the column provided for the same and for such purpose in the assessment rolls; that said assessment was assessed against individuals in some cases, and not assessed as nonresident land, the same being commingled with resident property; that the warrant attached to the assessment rolls for said years of 1898, 1899, and 1900 had the seals of the board of supervisors attached."

At the time of the commencement of such proceeding before the county treasurer, the tax deeds to Kusch had been recorded more than seven years; and the time to redeem said lots from the tax sales expired in December, 1903, more than nine years prior to such application. In the view which I take of the case the testimony given on the trial, relating chiefly to certain improvements on the premises, is unimportant. The statement of facts concludes as follows:

"It is further stipulated that if the county treasurer had no jurisdiction over the said proceedings instituted before him, and if his order made therein was void and of no force and effect, then the defendants are vested with title to said premises, and if said county treasurer had jurisdiction over said

proceedings and his order made therein is valid and of full force and effect, then the plaintiff is vested with title to said premises."

There is therefore but one question for the court to determine, and I have accordingly not considered the question whether or not the conveyance to plaintiff is void as champertous, nor have I considered whether or not plaintiff is entitled to succeed in this action on account of defects in defendants' tax titles, irrespective of the proceedings before the county treasurer.

[1-3] The Tax Law of 1896 (Laws of 1896, c. 908) contained ·two sections authorizing the Comptroller of the state in certain cases to cancel tax sales. The first of these (section 132) reads as follows:

"Effect of Former Deeds—Every such conveyance (referring to conveyances authorized by section 131) heretofore executed by the Comptroller, county treasurer or county judge and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the Comptroller, that shall have remained in force for two years after the last day allowed by law for redemption from such sale, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from the passage of this act; and in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled."

Section 140, the other section above referred to, reads as follows:

"Cancellation of Sales.—The Comptroller shall not convey any lands sold for taxes if he shall discover before the conveyance that the sale was for any cause invalid or ineffectual to give title to the lands sold; but he shall cancel the sale and forthwith cause the purchase money and interest thereon to be refunded out of the state treasury to the purchaser, his representatives or assigns. If the error originated with the county or town officers the sum paid shall be a charge against the county from which the tax was returned, and the board of supervisors thereof shall cause the same to be assessed, levied and collected and paid into the state treasury. If he shall not discover that the sale was invalid until after a conveyance of the lands sold shall have been executed he shall, on application of any person having any interest therein at the time of the sale, on receiving proof thereof, cancel the sale, refund out of the state treasury to the purchaser, his representatives or assigns, the purchase money and interest thereon, and recharge the county from which the tax was returned with the amount of purchase money and interest from the time of sale, which the county shall cause to be levied and paid into the state treasury. On any such application the Comptroller may appoint a commissioner with like powers and duties as in the case of an application for redemption; provided, however, that in any county which does not include a

portion of the forest preserve, such application for cancellation may also be made by the owner of the lands at the time of the tax sale."

These provisions were by section 157 of the same act made applicable to sales made by a county treasurer, and the county treasurer was in such cases invested with the same powers as the Comptroller. Sections 132, 140, and 157 of the Tax Law of 1896 have been substantially re-enacted in the Tax Law of 1909 (Laws of 1909, c. 62, §§ 132, 140, 158); and hence, notwithstanding the formal repeal of the former tax law by the latter, the provisions of those sections must be deemed to have been continuously in force since the Tax Law of 1896 took effect (June 15, 1896), and to speak from that time, or from the time when that act became a law (May 27, 1896), at least so far as the matters involved in the present action, which have all transpired since 1896, are concerned (Gen. Construction Law, § 95; People ex rel. Donegan v. Dooling, 141 App. Div. 31, 32, 125 N. Y. Supp. 783). The purpose and intent of sections 132 and 140 is not entirely plain. Section 140 seems to be prospective in its language, and there is nothing requiring a retrospective construction to be given it. Section 132, on the other hand, would appear to be wholly retrospective were it not for the use of the word "hereafter" in the last clause, which indicates that the words "all such conveyances" in the clause beginning "but all such conveyances and certificates and the taxes and tax sales on which they are based shall be subject to cancellation," etc., refer back to section 131 and the conveyances therein provided for, rather than to "every such conveyance heretofore executed," etc., at the beginning of section 132. Thus section 132, so far as it provides for an application to the Comptroller for the cancellation of a tax sale, is prospective as well as retrospective, and it is apparent that sections 132 and 140 to some extent overlap.

[4, 5] The application made by Sicardi, Koch, and Goetschius for the cancellation of the tax sales in question herein is stated in the agreed statement of facts to have been made under section 140, and this is obvious also from the procedure followed. It will therefore be pertinent first to inquire whether the county treasurer had jurisdiction under that section to entertain the application and make the order which he did make. The plaintiff must rely wholly on the last clause of the section, which was added in 1896; for the section as it read previous to that addition was held to authorize an application for the cancellation of a tax sale only by the purchaser and not by the owner (People ex rel. Wright v. Chapin, 104 N. Y. 369, 5 N. E. 64, 11 N. E. 383; Ostrander v. Darling, 127 N. Y. 70, 27 N. E. 353; People ex rel. Hamilton Park Co. v. Wemple, 139 N. Y. 240, 34 N. E. 883; People ex rel. Witte v. Roberts, 144 N. Y. 234, 39 N. E. 85; People ex rel. Millard v. Roberts, 151 N. Y. 540, 45 N. E. 941; People ex rel. Staples v. Sohmer, 206 N. Y. 42, 99 N. E. 156. The owner who is permitted to ·make the application under the added clause is "the owner of the lands at the time of the tax sale." Such an application may not be made either by the successor in interest of the purchaser or by the successor in interest of the owner in those cases where the owner may apply. See Report of Attorney General, 1911, vol. 2, pp. 185–189.

There is no proof before me as to who was the owner at the time of the tax sale; except the statement in the agreed statement of facts that the petition in the proceeding before the county treasurer alleged that Sicardi and Koch owned the premises from 1892 until December 17, 1912. Prior to the application they had sold the property to Goetchius, and they were evidently joined in the petition in the attempt to comply with the provision of section 140, above quoted. In my opinion, however, section 140 contemplates an application by one who was the owner of the premises at the time of the sale, and who still continues to be such owner, or at least has some interest in the cancellation of the sale by reason of having given covenants of the title or otherwise. After a conveyance of all his rights in the premises by a deed without covenants (as in the case here) the owner at the time of the sale has no longer any interest in the cancellation of the same, and hence no standing to make application therefor; for the real party in interest on any subsequent application is not the owner at the time of the sale, but the owner at the time of the application in whosesoever name the petition is made. To permit him to apply in the name of his predecessor in title would be for the court to connive at a plain evasion of the statute.

[6] I find nothing in the recent case of People ex rel. Staples v. Sohmer, 206 N. Y. 39, 99 N. E. 156, inconsistent with the conclusion I have reached. In that case the relators, who claimed as owners of the premises, were denied relief upon the ground that the Comptroller could not cancel a tax sale, made prior to the Tax Law of 1896, without making the purchaser a party, for which section 140 contained no provision. I am therefore of opinion that the county treasurer had no jurisdiction under section 140 to set aside the tax sales in question in·the case at bar. Did he, then, have jurisdiction under section 132? This question must also, I think, be answered in the negative, because of the lapse of more than five years between the expiration of the time to redeem and the making of the application. Meigs v. Roberts, 162 N. Y. 371, 56 N.·E. 838, 76 Am. St. Rep. 322; Halsted v. Silberstein, 196 N. Y. 1, 89 N. E. 443; Bryan v. McGurk, 200 N. Y. 332, 335, 93 N. E. 989. As the sales here involved took place subsequent to 1896,.no question as to the effect of section 132 of the Tax Law of that year as a curative statute can arise; but the section must be considered, for the purposes of the case at bar, as a statute of limitations. Hence, under the authorities last above cited, the question whether or not the defects for which the county treasurer canceled the tax sales were jurisdictional is immaterial. See also Wallace v. McEchron, 176 N. Y. 424, 68 N. E. 663. It is urged on behalf of the plaintiff that the county treasurer is placed by force of the statute on an equal footing with a competent court, and hence that as section 132 is a statute of limitation, the fact of the lapse of the five-year period does not affect that officer's jurisdiction to entertain the application and make the order canceling the sales, but constitutes merely matter of defense.

[7, 8] I cannot agree with the premise upon which this conclusion is sought to be founded, namely, that the county treasurer is invested with the powers and jurisdiction of a court. When an administrative

official is invested by statute with judicial or quasi judicial powers these powers can be exercised only in the manner and under the circumstances prescribed by the statute, and any attempted exercise of such powers in some other manner or under different circumstances is a nullity. Such an officer occupies a position so different from that of a court acting under its general jurisdiction concerning matters coming within the scope of that jurisdiction, or even acting in pursuance of a statutory jurisdiction, that there can be no proper comparison between the two. It will be noted that section 132 provides that "all such conveyances * * * and the taxes and tax sales on which they are based, shall be subject to cancellation" by reason of certain defects "on direct application to the Comptroller, or in an action brought before a competent court therefor." In case of an action brought in a competent court, to which the court would require all persons interested to be made parties, and in which the usual procedure in actions of like nature would be followed, it might very well be urged that the limitation of time provided for in the section would constitute matter of defense, and would not go to the jurisdiction of the court. But section 132 makes no provision for any method of procedure in the case of an application to the Comptroller or the county treasurer. It does not authorize him to issue any process to bring in the parties interested, nor to summon witnesses, nor to swear them, nor does it invest him with any of the incidental functions or powers which a court of law exercises in every action, whether the jurisdiction is inherent or conferred by statute, nor does it provide him with any of the machinery so necessary to the judicial determination of a controversy between parties. The language of Judge Danforth in People ex rel. Wright v. Chapin, supra, in relation to sections 83–85, c. 427, of the Laws of 1855 (which subsequently developed into section 140 of the Tax Law of 1896 and of the present law, above quoted) that the statute "gives no process to bring him [the purchaser] in confers no power to compel witnesses," and that "it creates no court, provides for a single transaction to which the Comptroller and the purchaser are the only parties," is equally applicable to section 132 so far as that section provides for action by the Comptroller or county treasurer. This language has been approved in numerous subsequent decisions. See cases cited supra, with People ex rel. Wright v. Chapin.

Although the action of the Comptroller or county treasurer in setting aside a conveyance on application of the owner, or taken in accordance with the statute, may be binding on the purchaser, even without notice or any proceedings judicial in their nature, where the sale has taken place since the enactment of the statute, on the ground that the purchaser takes his title "subject to just such limitations and conditions as the Legislature has prescribed" (People ex rel. Staples v. Sohmer, 206 N. Y. 45, 99 N. E. 156), nevertheless, as the purchaser has no opportunity under the statute to defend against the application, it can hardly be said that the period of limitation is matter of defense, but rather, and for that very reason, it would seem that the provision for a limitation of time was intended to prescribe a condition precedent to the exercise of jurisdiction. That the purchaser may in fact be notified

and may come in and be heard on the merits can make no difference in this respect, because such consent cannot confer on the officer a jurisdiction which the statute does not confer on him. But in the case at bar I find no evidence that the purchaser was notified or did appear, although there is a statement in plaintiff's brief that Kusch, then record owner of the tax title, had notice and appeared before the commissioner appointed by the county treasurer.

It is also urged that the five-year statute of limitations should have been pleaded—in the proceeding before the county treasurer, I assume. What has already been said is a complete answer to that contention, for the objection of want of jurisdiction of the subject-matter may be raised at any time. The invalidity of the order of the county treasurer, with the reason therefor, was set up in the answer in this action. The provision of section 140 relative to the appointment of a commissioner "with like powers and duties as in case of an application for redemption," even if applicable to a proceeding under section 132, does not change the views above expressed. The powers and duties of such a commissioner are set forth in section 137 of the Tax Law, and while they include "the same power to issue subpœnas and proceed with the examination of witnesses under oath as is had by a referee in a court of record," they do not include the power to summon as a party any person having or claiming an adverse interest. Notice to the applicant is specially provided for, but not notice to any other person, and this shows that section 140 in its present form, as well as section 132, contemplates an ex parte application to which the officer and the applicant are the only parties. The plaintiff suggests in his brief that section 141, authorizing the Comptroller (or county treasurer in a proper case) to set aside the cancellation of a tax sale on certain grounds, affords an opportunity for the purchaser, where a sale has been canceled at the instance of the owner, "to present as an affirmative defense the statutes of limitation contained in sections 131 and 132 of the Tax Law." Section 141 specifies four grounds for setting aside such a cancellation—fraud or misrepresentation, suppression of a material fact, mistake of fact, and want of jurisdiction or legal right to entertain the application. Only the last ground is applicable to the case at bar. Unless, therefore, the lapse of over five years from the expiration of the time for redemption goes to the jurisdiction of the officer, the defendants could have had no relief under this section on that account. If, as I have held, the lapse of time did deprive the county treasurer of jurisdiction, there is no merit in the contention that defendants, in order successfully to defend this action, ought first to have applied to have the cancellation of the tax sales set aside, and this for two reasons: First, because the parties have stipulated, as above set forth, that if the county treasurer did not have jurisdiction of the proceeding before him, then defendants have title to the property, in which case they are entitled to judgment; and, second, because the section does not afford an exclusive remedy, but merely an additional remedy to a party aggrieved by a void cancellation of a tax sale. It does not deprive him of any of his common-law rights or remedies. The same argument applies to want of jurisdiction under section 140, above considered.

I hold, therefore, that the county treasurer had no jurisdiction of the application to set aside the tax sales and conveyances in question in this action, and accordingly, in pursuance of the stipulation of the parties, judgment is awarded in favor of the defendants dismissing the complaint upon the merits. Settle decision and judgment on notice.